# TITLE GUARANTY & SURETY COMPANY *v.* NICHOLS.

## ERROR TO THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 102.   Argued December 13, 1911.—Decided April 8, 1912.

While liability under a surety bond for honesty of an employé would
be defeated if the loss was due to neglect of the employer to take
the precautions required by the bond, the condition is subsequent
and not precedent, and there is no occasion for an averment in respect
thereto; it is a matter of defense that must come from the other
side, upon whom the *onus* rests.

Where the evidence, as in this case, shows that examinations were
made, it is for the jury to determine whether reasonable diligence
had been used in making them.

The certificate of correctness of employé's accounts on obtaining re-
newals of surety bond for his honesty held in this case not to be a

warranty but a certificate that his books had been examined and found correct.

The mere fact that the examination, if made by a reasonably competent person, failed to discover discrepancies covered by false entries and bookkeeping devices would not defeat renewals of the policy.

On appeals from the courts of the Territories, questions of weight and credibility of evidence are not for the consideration of this court.

12 Arizona, 405, affirmed.

THE facts, which involve the liability of a surety company on a fidelity bond given to protect a bank against dishonesty of its cashier, are stated in the opinion.

*Mr. Philip Walker,* with whom *Mr. C. F. Ainsworth* was on the brief, for plaintiff in error:

Through the failure of the plaintiff below to establish a condition precedent to his right to recover on the bond, that is, the monthly examination of the employé's accounts, he did not establish any liability against the plaintiff in error on the. cause of action set out in the complaint.

The burden remained on the plaintiff below to establish that his assignor had performed its part of the contract, including that relating to monthly accounts and audits, and this he did not attempt to do. *Insurance Co.* v. *Ewing,* 92 U. S. 377, distinguished.

The renewal statement was in law a warranty, and if it were false, whether with or without knowledge, the bond was void as to subsequent defalcations. *American Bonding Co.* v. *Burke,* 36 Colorado, 49, 58; *Livingston* v. *Fidelity & Deposit Co.,* 76 Oh. St. 253; *Winkler Brokerage Co.* v. *Fidelity & Deposit Co.,* 119 Louisiana, 735; *Guar. Co. of N. A.* v. *First Nat. Bank of Lynchburg,* 95 Virginia, 480; *Glidden* v. *Fidelity & Guar. Co.,* 198 Massachusetts, 109; *Willoughby* v. *Fid. & Dep. Co.,* 16 Oklahoma, 546, affirmed, 205 U. S. 537; Frost on Guaranty, 241 *et seq.;* Walker on Fidelity Bonds, 49 *et seq.*

*Mr. Frank B. Kellogg,* with whom *Mr. C. A. Severance, Mr. Robert E. Olds, Mr. Thomas Armstrong, Jr.,* and *Mr. Ernest W. Lewis* were on the brief, for defendant in error:·

The defense of noncompliance on the part of the bank with the terms and conditions of the contract has not been established.

. The contract must be construed,. if possible, in favor of the insured, rather than in favor of the insurer. *National Bank* v. *Insurance Co.,* 95 U. S. 673; *Thompson* v. *Phœnix Ins. Co.,* 136 U. S. 287, 297; *Imperial Fire Ins. Co.* v. *Coos County,* 151 U. S. 452, 462; *Moulor* v. *American Life Ins. Co.,* 111 U. S. 342, 343; *American Surety Co.* v. *Pauly,* 170 U. S. 133, 144, 160; *Ætna Indemnity Co.* v. *Crowe,* 154 Fed. Rep. 545, 555.

The burden of proving the allegations of the answer with respect to the falsity of specific declarations rested with the surety company. *Piedmont Life Ins. &c. Co.* v. *Ewing,* 92 U. S. 377; *Redman* v. *The Ætna Ins. Co.,* 49 Wisconsin, 431..

The performance of conditions subsequent need not be alleged and proved by the parties suing upon a contract. *Chambers* v. *Northwestern Mut. Life Ins. Co.,* 64 Minnesota, 495; *Badenfield* v. *Mass. Mut. Accident Assn.,* 13 L. R. A. (Mass.) 263, and cases cited in note; Jones on Evidence, § 179.

On the subject of the burden of proof, a distinction has been taken between express warranties contained in a policy of insurance and declarations made in an application, even where such declarations are stipulated to be warranties. *Am. Credit Indemnity Co.* v. *Wood,* 73 Fed. Rep. 81.

The bank's duty under the contract was confined to the observance of good faith and fair dealing; and the evidence shows that this obligation was fully met. *Guarantee Co.* v. *Mechanics' Saving Bank,* 80 Fed. Rep. 766, 774.

A total failure on the part of an employer to make examination of accounts, pursuant to an agreement to do so in the bond or application, will operate to defeat recovery, as in *Hunt* v. *Fidelity & Casualty Co.*, 99 Fed. Rep. 242, and *Carstairs* v. *American Bonding & Trust Co.*, 112 Fed. Rep. 620, but these cases can be distinguished from this case, in which the insured did, with the utmost good faith, make monthly examinations, the books and records do not on their face, disclose any defalcation; in fact the embezzlements could not have been detected at all through inspection of any of the data at hand when the examinations were made.

Mr. Justice Lurton delivered the opinion of the court.

Action upon a bond executed by the plaintiff in error to protect the Union Bank & Trust Company, of Phœnix, Arizona, against the dishonesty of its cashier. There were two or more renewals. Embezzlements by the cashier occurred during the currency of the bond. After a right of action had accrued, the bond was assigned to the defendant in error, who brought this action thereon.

The principal defense was that the loss was due to the neglect of the employer to supervise the conduct of the employé by making such monthly examinations of his accounts as it agreed to make or have made. There was a jury and verdict for the plaintiff, and a judgment against the Surety Company, which was affirmed by the Supreme Court.

A number of errors have been assigned which relate to this defense, but the argument has turned upon those which in different ways, raise the question as to whether, after the defendant in error had made out a *prima facie* case by proving the bond and its breach by a refusal to indemnify him for losses sustained during its currency through the dishonesty of the employé guaranteed, the

onus devolved upon the Surety Company to plead and prove that the loss had occurred through the fault of the employer in not making the monthly examinations which it had agreed to make. The trial judge ruled that the onus was upon the defendant, and this ruling has been affirmed by the Supreme Court.

Whether this ruling was right or wrong must depend upon whether the requirement of the bond, that monthly examinations of the books of the employé should be made, constituted a condition precedent or a condition subsequent. The bond on its face requires the employer "to take and use all reasonable steps and precautions to detect and prevent any act upon the part of the employé which would tend to render the company liable for any loss." It also provides that if the statements by the employer in the application "shall be untrue, the bond shall be void." The obligation in respect to examinations of the employé's accounts is found in the application. The questions propounded by the Surety Company and the employer's answers, so far as relevant, were these:

"To whom and how frequently will he account for his handlings of funds and securities? Monthly; to Board of Directors.

"What means will you use to ascertain whether his accounts are correct? Examination of books and count of money and securities. How frequently will they be examined? Monthly or oftener. By whom will they be examined? Our Auditor.

"When were his accounts last examined? February 8th, 1905.

"Were they reported correct? Yes.

"Is there now or has there been any shortage due you by applicant? No."

There was never any question but that liability under the bond would be defeated if it appeared that the loss attributable to the dishonesty of the employé was due

to the neglect of the bank to make the monthly examinations required. And so the jury were instructed. The question was whether this requirement was a condition precedent to liability which the bank was required to aver and prove or whether it was a defense to be made out by the defendant. But a construction which makes the bond inoperative until the employer shows that it had made such examinations is not a fair and reasonable interpretation. The distinction between conditions precedent and subsequent is plain enough. The condition here involved, if properly a condition at all, is of the latter class.

The coming into effect of a contract may be made to depend upon the happening or performance of a condition. But a condition subsequent presupposes a contract in effect which may be defeated by the happening or performance of a condition. Where, therefore, an action is upon a contract subject to a condition precedent, the performance of that condition must be averred and proved; but if the contract sued upon is subject to a condition subsequent, there is no occasion for any averment in respect to the condition. It is a matter of defense which must come from the other side. Chitty on Pleading, vol. 1, pp. 246, 255.

The plaintiff was plainly entitled to recover upon proving the bond, an embezzlement and a breach, by a refusal to indemnify. It was not obliged to aver that it had made the examinations which it agreed should be made. If it had failed in that duty, it was for the Surety Company to so plead and prove. Such, indeed, was the course of the pleading in this case, and a breach of the agreement to make such examinations was set up as a defense. There was no error in the ruling of the court that the onus was upon the Surety Company to prove a breach of the obligation to make examinations. *Piedmont & A. L. Ins. Co. v. Ewing,* 92 U. S. 377; *American Credit Indem. Co. v. Wood,* 73 Fed. Rep. 81; *Redman v. Ætna Ins. Co.,* 49 Wis-

consin, 431; *Murray* v. *N. Y. Life Ins. Co.*, 85 N. Y. 236; *Freeman* v. *Travelers' Ins. Co.*, 144 Massachusetts, 572.

It has been argued that there was no evidence upon which the case could go to the jury upon the question of whether reasonably proper monthly examinations were in fact made. This insistence has no foundation. The plaintiff in error brought out upon its own cross-examination of McDowell, the defaulting cashier, that he made monthly reports and that these reports were gone over by the officers of the bank regularly, once a month. He testified that his cash and securities were counted and examined and his report verified from the book entries made by the bank's bookkeeper. Indeed, he testified, "that there never was a set of directors in any bank that tried to watch things closer than that set of directors." The cashier's embezzlements of money were covered by false entries relating to remittances to the bank's correspondents, whereby the balances in such banks were made to appear much larger than they actually were. The defendant's expert evidence tended to show that if the returned vouchers or the reconciliation reports of such banks had been compared with the ledger accounts, the discrepancy would have appeared. But the cashier was cunning, and he testified to the difficulties which he threw in the way of any effort to verify the books in these particulars. He supported his report by his cash and his bills receivable and a showing of the books kept by another officer, who made the entries from "slips" made by himself (the cashier), purporting to show cash used to buy exchange for remittances. These "slips," being falsified memoranda, were innocently used by the bookkeeper as the basis for the ledger entries which misled the officers in their examinations. On this evidence the question as to whether reasonable diligence had been used in making such examinations was one for the jury. It was so submitted under a fair charge, and they found for the

plaintiff below.   Finally, it is said that the greater part of the loss occurred during the currency of renewal bonds, and that each such renewal was made upon a certificate by the employer which stated that just prior thereto the books and accounts of the employé "were examined and found correct in every respect and all moneys accounted for."   It is said that this statment was untrue, inasmuch as at the date of such renewals the books and accounts were not correct and the cashier was short in his cash. But the certificate is not to be taken as a warranty of the correctness of the accounts.   The statement is that his books and accounts had been examined and found correct.   The mere fact that the examination, if made by a reasonably competent person, failed to discover discrepancies covered up by false entries, or other bookkeeping devices, would not defeat the renewal.   The case upon this point went to the jury upon the fact of reasonable examinations and the good faith of the bank in making the representation.   The question of the weight or credibility of the evidence is not one for our consideration. There was some evidence which the trial judge thought sufficient to carry the case to the jury.   The Supreme Court of Arizona agreed with the trial court, and with both courts we concur.

The assignments of error relating to admission of evidence have been examined so far as the state of the record admits.   The court below thought most of them insufficiently saved and none of them so material as to require a reversal for new trial.   In this we concur.

*Judgment affirmed.*

Mr. Justice McKenna dissents.